# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL GUNNER, | ) | CASE NO. 1:09-CV-01444 |
| | ) | |
| Petitioner, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| MARGARET BRADSHAW, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Michael Gunner ("Gunner"), challenges the constitutionality of his conviction in the case of *State v. Gunner*, Medina County Court of Common Pleas Case No. 05-CR-0235. Gunner, *pro se*, filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on June 24, 2009.  On December 4, 2009, Warden Margaret Bradshaw ("Respondent") filed her Answer/Return of Writ.  (Doc. No. 5.)  Gunner filed a Traverse on February 11, 2010. (Doc. No. 8.)  Respondent then filed a Reply on February 25, 2010.  (Doc. No. 9.)  This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For reasons set forth in detail below, it is recommended that Gunner's petition be DENIED.

## I.  Procedural History

### A.    Conviction

On May 15, 2005, a Medina County Grand Jury charged Gunner with seven counts of sexual battery in violation of Ohio Revised Code ("O.R.C.") § 2907.03(A)(5) and seven counts

of unlawful sexual conduct with a minor in violation of O.R.C. § 2907.04(A)(B)(5).  (Doc. No. 5, Exh. 1.)  On November 8, 2005, Gunner entered a guilty plea with respect to the seven counts of sexual battery, and the remaining counts were dismissed at the State's request.  (Doc. No. 5, Exh. 2.)  On December 28, 2005, the trial court sentenced Gunner to a term of two years imprisonment for three of the sexual battery counts, and one year imprisonment for the four remaining.  The sentences were to be served consecutively for an aggregate term of ten years imprisonment.  (Doc. No. 5, Exh. 11.)  Gunner was also found to be a sexual predator.  (Doc. No. 95, Exh. 5.)

**B.    Direct Appeal**

On December 29, 2005, Gunner, through new counsel, filed a Notice of Appeal with the Court of Appeals for the Ninth Appellate District ("state appellate court").  (Doc. No. 5, Exh. 6.)  Gunner raised the following assignments of error:

> 1(a). The trial court erred in its ruling that Defendant-Appellant Michael Gunner is a sexual predator, pursuant to O.R.C. § 2950.09, as its decision is against the manifest weight of the evidence.
>
> 1(b). The trial court erred in considering incorrect and irrelevant matters of law when it ruled that Defendant-Appellant Michael Gunner is a sexual predator, but stated that his ruling can be "revisited."
>
> 2. The trial court committed error in imposing a consecutive prison sentencing [sic] on Defendant-Appellant Michael Gunner pursuant to R.C. Section 2929.14(E)(4), since R.C. 2929.14(E)(4) violates *Blakely v. Washington* (2004), 542 U.S. 296 and is unconstitutional pursuant *State v. Foster*, 2006 Ohio 856.

(Doc. No. 5, Exh. 7.)

On September 29, 2008, the state appellate court affirmed the trial court's determination that Gunner was a sexual predator, but remanded the matter pursuant to *State v. Foster*, 845 N.E.2d 470, 109 Ohio St. 3d 1 (Ohio 2006) for a new sentencing hearing.  (Doc. No. 5, Exh. 9.)

-2-

The state appellate court specifically instructed that, upon remand, the trial court "may consider both the appellant's argument for a reduced sentence and the prosecution's argument for an increased sentence."  *Id.*  Gunner did not file an appeal with the Supreme Court of Ohio.

**C.    Resentencing and Appeal**

On February 9, 2007, the trial court held a resentencing hearing and again imposed a ten year aggregate prison term, this time by sentencing Gunner to five years on each count, but running some consecutive to others.  (Doc. No. 5, Exh. 10.)

On August 10, 2007, Gunner, through counsel, filed a Notice of Appeal from his resentencing.  (Doc. No. 5, Exh. 12.)  On December 5, 2007, the state appellate court dismissed the appeal due to Gunner's failure to file a brief.  (Doc. No. 5, Exh. 13.)

On December 10, 2007, Gunner, through counsel, filed a Motion for Reconsideration, which the state appellate court denied.  (Doc. No. 5, Exhs. 14 & 15.)

**D.    Application to Reopen Appeal**

On February 28, 2008, Gunner, through counsel, filed an application to reopen his direct appeal pursuant to Ohio App. R. 26(B) alleging that appellate counsel was ineffective for failing to timely file an appellate brief.  (Doc. No. 5, Exh. 16.)

On March 12, 2008, the state appellate court granted the application to reopen.  (Doc. No. 5, Exh. 18.)  Thereafter, on May 16, 2008, Gunner filed his appellate brief raising the following assignments of error:

    1.    The trial court erred by imposing an illegal sentence.

    2.    The trial court committed plain error by increasing Defendant's stated prison terms of one (1) and two (2) years to five year sentences, as that exceeded the mandate from the Ninth District Court of Appeals for re-sentencing.

3.      Appellant was denied his due process rights under the Sixth Amendment of the United States Constitution and Article I, Section(s) Ten and Sixteen of the Ohio Constitution, due to ineffective assistance of counsel, at the re-sentencing hearing, when counsel failed to object to numerous trial court errors and failed to protect Appellant's right to appeal.

4.      The trial court erred to the Appellant's prejudice at re-sentencing when it imposed the maximum stated prison terms of five years on each count for felonies of the third degree.

5.      Appellant was denied the effective assistance of counsel on his appeal of right to this court in violation of the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution and Art. I, §§ 2, 10 and 16 of the Ohio Constitution.[1]

(Doc. No. 5, Exh. 19.)

On September 29, 2008, the state appellate court overruled Gunner's assignments of error.

(Doc. No. 5, Exh. 21.)

On October 28, 2008, Gunner, *pro se*, filed a filed a Motion for Reconsideration, which the state appellate court denied.  (Doc. No. 5, Exhs. 22 & 23.)  On October 29, 2008, Gunner through counsel, filed a motion to certify record to the Supreme Court of Ohio for conflict, which the state appellate court also denied.  (Doc. No. 5, Exhs. 23 & 25.)

On November 13, 2008, Gunner, through counsel, filed a Notice of Appeal with the Supreme Court of Ohio and raised the following propositions of law:

I.      The trial court commits plain error by imposing an illegal sentence.

II.     A trial court commits plain error when it increases a defendant's stated prison terms on remand, where the only issue previously appealed by the

---

[1]  This final assignment of error was included as a justification for allowing the reopening of the appeal.  In point, Gunner argued that prior appellate counsel was ineffective for failing to timely file an appellate brief leading to the dismissal of his direct appeal.  As the application to reopen was granted and the prior dismissal of December 5, 2007 was vacated, this assignment of error was rendered moot.  (Doc. No. 9, Exh. 21 at 8.)

-4-

defendant concerns whether the sentences initially imposed should run consecutively or concurrently.

    III.    A trial court denies a defendant his due process rights under the Sixth Amendment of the United States Constitution and Article I, Sections Ten and Sixteen of the Ohio Constitution; due to ineffective assistance of counsel at the re-sentencing hearing, when counsel fails to object to numerous trial court errors and fails to protect appellant's right to appeal.

    IV.    A trial court errs and abuses its discretion to a criminal defendant's prejudice at re-sentencing when it imposes a maximum stated prison term on each count for felonies of the third degree, where such had not previously been imposed.

(Doc. No. 5, Exhs. 26 & 27.)

On March 25, 2009, the Ohio Supreme Court denied leave to appeal, and dismissed the case as not involving any substantial constitutional question.  (Doc. No. 5, Exh. 29.)  Gunner, *pro se*, filed a Motion for Reconsideration, which the court denied on June 3, 2009.  (Doc. No. 5, Exhs. 30 & 31.)

**E.    Second Application to Reopen Appeal**

After the Ohio Supreme Court denied leave to appeal, Gunner, *pro se*, filed a second application to reopen his appeal, which the state appellate court denied as untimely and without merit.  (Doc. No. 5, Exhs. 32 & 35.)  A subsequent Motion for Reconsideration and Motion to Certify Conflict were also denied.  (Doc. No. 5, Exhs. 36 - 39.)  No appeal from this denial was filed with the Supreme Court of Ohio.

**F.    Federal Habeas Petition**

On June 24, 2009, Gunner filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

GROUND ONE: Denial of Equal Protection of the Law under the 14TH Amendment to the United States Constitution.

-5-

GROUND TWO: Denial of Due Process of Law protected under the 5TH and 14TH Amendments to the United States Constitution when trial court exceeded the remand order of appellate court.

GROUND THREE: Denial of Due Process of Law protected by the 5TH and 14TH Amendments to the U.S. Constitution when the trial court modified my individual sentences for Counts I, III, and V from two years to five years as these sentences were not appealed.

GROUND FOUR: Denial of Due Process of Law protected by the 5TH and 14TH Amendments to the U.S. Constitution when the trial court modified my sentences in Counts VII, IX, XI, and XIII, which were legal sentences and could not be part of the remand order.

GROUND FIVE: Denial of Due Process of Law protected by the 5TH and 14TH Amendments to the U.S. Constitution when the appellate court and trial courts failed to apply the doctrine of res judicata when modifying my original individual sentences which were not cross appealed by the State of Ohio.

GROUND SIX: Denial of Due Process of Law protected by the 6TH Amendment to the U.S. Constitution due to the ineffective assistance of counsel.

GROUND SEVEN: Denial of due process of law protected by the 5TH and 14TH Amendments to the U.S. Constitution pursuant to *North Carolina v. Pearce*, (1931), 282 U.S. 304, when the trial court increased my individual sentences after a successful appeal.

GROUND EIGHT: Denial of Due Process of Law protected under the 5TH, 6TH, and 14TH Amendments to the U.S. constitution when the trial court judge considered facts outside the record or admitted by me when imposing five year prison sentences on each count.

(Doc. No. 1.)

## II.  Exhaustion and Procedural Default

### A.  Exhaustion Standard

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair

opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

**B.   Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue

---

[2]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts

-8-

well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39.  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995);  *See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D.Ohio 2007).

**C.    Analysis**

Respondent asserts that grounds one, two, three, four, five, six (in part), seven, and eight were not fairly presented to the state courts and are procedurally defaulted.

**1.  Ground One**: **Equal Protection**

In ground one, Gunner alleges a violation of the Equal Protection Clause of the 14th Amendment resulted from the trial court's sentence on remand.  According to Gunner, the trial court relied upon the "sentencing package doctrine" when it converted his original one and two-year sentences for each count into five-year terms.[3]  In his petition, Gunner claims that the "sentencing package doctrine" should not have been applied because it is not valid law in Ohio. (Doc. No. 1.)  Thus, he concludes that its application to him, and not to other defendants, violates the Equal Protection Clause of the Fourteenth Amendment.  *Id*.

Gunner, however, did not present this claim as a federal constitutional issue in his state appellate brief.  (Doc. No. 5, Exh. 19.)  He did argue that Ohio law prohibits the use of the sentencing package doctrine, but did not tie this argument into an Equal Protection claim.  *Id*. Furthermore, Gunner failed to raise an Equal Protection claim before the Ohio Supreme Court. (Doc. No. 5, Exh. 22.)  Gunner argues that he did indeed raise an Equal Protection argument in

---

[3] "Over the years, some [Ohio] appellate courts have adopted the 'sentencing package' doctrine, a federal doctrine that requires the court to consider the sanctions imposed on multiple offenses as the components of a single, comprehensive sentencing plan."  *State v. Saxon*, 846 N.E.2d 824, 109 Ohio St. 3d 176, 178 (Ohio 2006) (citations omitted). According to the doctrine, an error within a sentence as a whole, even if only in relation to one of multiple offenses, "may require modification or vacation of the entire sentencing package due to the interdependency of the sentences for each offense."  *Id*. The *Saxon* court noted that sentence packaging is inapplicable in Ohio because "there is no potential for an error in the sentence for one offense to permeate the entire multicount group of sentences[, as] Ohio's felony-sentencing scheme is clearly designed to focus the judge's attention on one offense at a time."  *Id*. at 179 (*citing* O.R.C. § 2929.14(A)).

the state courts and points to arguments contained in his *pro se* motions for reconsideration following the denial of his appeals before both the state appellate court and the Ohio Supreme Court.  (Doc. No. 8, *citing* Doc. No. 5, Exhs. 22 & 30.)  Gunner's "arguments" in his motions for reconsideration, however, do not constitute fair presentation, as they are merely general and unsubstantiated legal conclusions.[4]  *See Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004) ("[G]eneral allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present claims' that specific constitutional rights were violated."); *Slaughter v. Parker*, 450 F.3d 224, 235 (6th Cir. 2006).

Furthermore, "[a]n application for reconsideration should not be employed when a party merely disagrees with conclusions reached or logic used by an appellate court, *State v. Owens* (1997), 112 Ohio App.3d 334, 336, 678 N.E.2d 956, or to rehash or expound on arguments made during the appeal, *see Garfield Hts. City School Dist. v. State Bd. of Educ.* (1992), 85 Ohio App. 3d 117, 127-128, 619 N.E. 2d 429."  *City of Akron v. Callaway*, 2005 Ohio App. LEXIS 2558 (Ohio Ct. App. May 17, 2005)  "It has been stated many times that a motion for reconsideration pursuant to App. R. 26(A) is not an opportunity to raise new arguments that a party simply neglected to make earlier in the proceedings, but is an opportunity to correct obvious errors in the appellate court's opinion in order to prevent a miscarriage of justice."  *In re Estate of Traylor*, 2005 Ohio App. LEXIS 1310, 2005-Ohio-1348 at ¶8 (Ohio Ct. App. Mar. 17, 2005); *accord Waller v. Waller*, 2005 Ohio App. LEXIS 5083, 2005-Ohio-5632 at ¶3 (Ohio Ct. App.

---

[4] His vague statements are insufficient to constitute a "fair presentation" of a *federal* constitutional argument.  Gunner did not rely upon federal cases employing constitutional analysis, did not rely upon state cases employing federal constitutional analysis, did not phrase his claim in terms of constitutional law, and did not allege facts well within the mainstream of federal constitutional law.  *See Newton,* 349 F.3d at 877.

Oct. 21, 2005).  A federal constitutional claim is "fairly presented when it is presented at the *first possible opportunity*" within one completed round of a state's appellate review.  *See, e.g., Cottenham v. Jamrog*, 248 Fed. Appx. 625 (6th Cir. 2007) (emphasis added) (*citing Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003)).

Here, Gunner did not present his Equal Protection argument in his appellate brief on direct appeal, nor did he present it in his appeal before the Ohio Supreme Court.  As such, his claim was not fairly presented.  In addition, his cursory presentation of these issues in motions for reconsideration was not a procedurally proper vehicle to raise new arguments.  As Ohio courts would no longer consider the claim due to the doctrine of *res judicata*, this ground for relief is procedurally defaulted.  *See, e.g., Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998) (finding that the doctrine of *res judicata* applies to constitutional claims that could have been raised in a direct appeal, as well as to constitutional claims that could have been raised in any post conviction proceeding) (*citing State v. Combs*, 652 N.E.2d 205, 209 (Ohio Ct. App. 1994)).

### 2.  Grounds Two, Three, Four and Five: Due Process

Gunner's second ground for habeas relief is factually similar to his first, except that he alleges a violation of the Due Process Clause resulted from the trial court exceeding the state appellate court remand order when the sentences as to each count were increased.  Grounds three, four, and five essentially raise the same argument, except Gunner emphasizes that in state court he did not challenge the length of each individual sentence but only their consecutive nature.[5]  (Doc. No. 1 at 9; Doc. No. 8 at 40-46.)  Consequently, he argues that the trial court had

---

[5]  In ground three and four, Gunner argued that he did not appeal the length of the underlying sentence and argued that they should not have been vacated.  In ground five, Gunner merely takes his argument a step further and argues that, because he did not

no authority to increase his sentence on each count from one and two years to five.  *Id*.  In other words, Gunner again claims that the "sentencing package doctrine" should not have been applied to him because it is not valid law in Ohio.

Gunner's briefs filed in state courts claimed that the sentencing remedy contained in *Foster*, constituted a violation of the *Ex Post Facto* and Due Process Clauses of the United States Constitution as the decision constituted an unforeseeable judicial enlargement of a criminal statute.  (Doc. No. 5, Exhs. 19 & 27.)  However, a close review of Gunner's petition and traverse indicates that he is not raising the same argument before this Court.[6]  (Doc. No. 1; Doc. No. 8.)  Instead, Gunner argues that a due process violation resulted when the trial court exceeded the state appellate's court remand order by imposing an entirely new sentence.  *Id*.

Though Gunner attempts to characterize his claim as involving a federal constitutional question, his argument amounts to nothing more than a state law claim.  Essentially, Gunner argues that: (1) the trial court violated state appellate rules when it "exceeded the scope" of the

_____

appeal the length of the underlying sentences, the length of those sentences could not be altered as reopening the issue was barred by the doctrine of *res judicata*.  (Doc. No. 8 at 51-56.)

[6]  Gunner does not argue before this Court that his sentence violates the *Ex Post Facto* Clause.  This Court has previously rejected the argument that *Foster*'s sentencing remedy violated the *Ex Post Facto* and Due Process Clauses.  *See, e.g., Schweitzer v. Williams*, 2009 U.S. Dist. LEXIS 125137 (N.D. Ohio Sept. 9, 2009), *adopted by* 2010 U.S. Dist. LEXIS 14535 (N.D. Ohio Feb. 19, 2010); *Adams v. Kelly*, 2009 U.S. Dist. LEXIS 116558 (N.D. Ohio Nov. 23, 2009), *adopted by* 2009 U.S. Dist. LEXIS 116726 (N.D. Ohio Dec.15, 2009).  Recently, the Sixth Circuit has also rejected the argument that the *Foster* remedy results in an *ex post facto* violation when consecutive sentences are involved.  *See Hooks v. Sheets*, 2010 U.S. App. LEXIS 8646 (6th Cir. April 27, 2010) (declining to "reach the question of whether re-sentencing under *Foster*, **in general**, violates the *Ex Post Facto* or Due Process Clauses of the United States Constitution...") (emphasis added).

-13-

state appellate court's remand; (2) the appellate court should not have disturbed the original length of his individual sentences as they were not challenged on appeal; and, (3) *res judicata* barred modifications to the original length of his underlying sentences.  *Id*.  These arguments are not the equivalent of a federal due process argument.  Furthermore, the state appellate court itself found that the trial court did not exceed the remand, as the original remand order *vacated* Gunner's sentence and instructed the trial court to hold a new sentencing hearing.  (Doc. No. 5, Exh. 21.)  As Gunner failed to raise a federal constitutional argument in state court, and he would be prohibited from doing so now, grounds two through five are also procedurally defaulted.

### 3. Ground Six: Ineffective Assistance of Counsel

In ground six, Gunner asserts that his counsel was ineffective at the re-sentencing hearing for the following reasons: (1) failing to object to the sentencing court exceeding the state appellate court's remand order; (2) failing to object to the sentencing court's use of the "sentencing package doctrine;" (3) failing to object to the sentencing court's increase of the underlying sentences; (4) failing to object to the increase on the grounds that the sentence was vindictive under *North Carolina v. Pearce*, 395 U.S. 711 (1969); (5) failing to object to the sentencing judge's use of his upcoming re-election as a basis for the sentence imposed; and (6) failing to object to a statement by the prosecution that Gunner was grooming another victim from inside prison.  (Doc. No. 1 at 12.)

On direct appeal, Gunner raised an ineffective assistance of counsel claim in his third assignment of error before the state appellate court.  (Doc. No. 5, Exh. 19 at 28-35.)  Notably, Gunner's ineffective assistance of counsel argument was premised on the following: (1) failing

to object to the resentencing hearing, the imposition of maximum sentences, and the court's

application of the "sentencing package doctrine;" (2) failing to object to the prosecution's

interpretation of the state appellate court's remand order; and, (3) failing to object to a statement

by the prosecution that Gunner was grooming another victim from inside prison.  *Id*.  As Gunner

did not raise the issue of counsel's failure to object to what he perceived to be judicial

vindictiveness or a lack of impartiality before the state appellate court, those arguments were not

fairly presented.  Since he would be prohibited by Ohio law from raising them now, they are

procedurally defaulted.  Gunner's remaining arguments will be addressed in the merits

discussion below.

### 4.  Grounds Seven and Eight: Vindictiveness and Reliance of Improper Facts

In ground seven, citing the Supreme Court's opinion in *Pearce*, Gunner alleges a due

process violation stemming from judicial vindictiveness.  (Doc. No. 1.)  This claim, however,

was not raised during the state appeals process.  In his appellate brief, Gunner argued that the

trial court improperly enhanced his sentence largely based on *Foster* and an alleged

misapplication of Ohio's appellate procedures.  (Doc. No. 5, Exh. 19 at 35-43.)  Gunner did not

cite *Pearce* or any related federal precedent, nor did he allege that the trial court's re-sentencing

judgment was the product of vindictiveness.  Thus, ground seven was never fairly presented to

the state courts.

In ground eight, Gunner claims his due process rights were violated where the trial court

allegedly relied upon improper and incorrect information at his re-sentencing.  (Doc. No. 1.)

This argument was also not raised as a stand-alone claim in the state courts, but only as a basis

for an ineffective assistance of counsel claim which is addressed below.  (Doc. No. 5, Exh 19 at

-15-

33-34.)  As such, ground eight was not fairly presented.

Since Mann would be prohibited by Ohio law from raising either claim now, they are procedurally defaulted.  While default may be excused upon a showing of cause and prejudice or actual innocence, Gunner has not attempted to raise such issues.

### III.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."  *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court

-16-

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**A.  Ground Six: Ineffective Assistance of Counsel**

In ground six, Gunner raises several instances where he alleges his counsel was ineffective. (Doc. No. 1.)  The Court has previously determined that a number of these claims are procedurally defaulted.  The following ineffective assistance of counsel claims, which were raised in state court, will be addressed on the merits: (1) counsel's failure to object to the *de novo* nature of the resentencing hearing, the imposition of maximum sentences, and the court's application of the "sentencing package doctrine;" (2) counsel's failure to object to the prosecution's interpretation of the state appellate court's remand order; and, (3) counsel's failure to object to a statement by the prosecution that Gunner was grooming another victim from inside

prison.  (Doc. No. 1; Doc. No. 5, Exh. 19.)

To establish ineffective assistance of counsel, Gunner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution.  *See Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985).  A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair.  *Id*.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy.  *Id*. at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

Counsel's failure to object to the *de novo* resentencing hearing, the sentencing court's imposition of maximum sentences, and the court's alleged application of the "sentencing package doctrine" does not constitute ineffective assistance of counsel, as these objections would not have had any impact on the result of the resentencing or subsequent appeal.  Likewise,

-18-

counsel's failure to object to the prosecution's interpretation of the state appellate court's remand order also did not constitute ineffective assistance.  As held by the state appellate court, the Ohio Supreme Court's decision in *Foster* required the trial court to hold a new sentencing hearing.  (Doc. No. 5, Exh. 21 at 3.)   Under *Foster*, the trial court could properly sentence Gunner to any sentence within the statutory range and could have conceivably imposed an even greater sentence.  Furthermore, as the state appellate court noted, the trial court did not exceed the appellate court's remand order, as the entire sentence was vacated.  *Id*.  Therefore, it cannot reasonably be argued that counsel's failure to object was tantamount to ineffective assistance.

Finally, Gunner argues that counsel was ineffective for failing to object to a statement by the prosecution that Gunner was grooming another victim from inside prison.  The resentencing transcript reveals the following exchange:

> **THE COURT**: I am not going -- this is the situation, [defense counsel], it would be the easiest thing for me to give your client ten years.
> I can do it in such a way there would be no chance I would be reversed, you know it, I know it.
> I am not doing that today.
> I want to see what is in that file down in Belmont, and I am interested in why they drew this conclusion that on some of these factors he seems to have need, some improvement, but on the emotional side he seems to need considerable improvement.
> I will tell you what I am looking for, [defense counsel], what I am interested in is that my memories of this offense were that the State of Ohio was very concerned that your client was, to use a word, a manipulative person, he had manipulated both the victim, he manipulated other people, and he put himself in a position he was grooming somebody else.
> Was that the case?
>
> **[PROSECUTOR]**: Probably this springtime.
>
> **THE COURT**: As a result of that, I am not sure how this relates to one another.
> Here is what I am telling you.  I am not telling you I won't give the ten years.
> I want to know more about this before I sentence him again.

-19-

***

**THE COURT**: Let's do this, why don't we do this.  Let's set this -- you have no objection to me getting more information?

**[DEFENSE COUNSEL]**: No, in fact we appreciate it.

**THE COURT**: Before you leave, let's get a new date from Ms. Barnes so everybody knows the date, so the victims know, so [defense counsel] may want an opportunity to present additional information, and we will go from there.

Ms. Connelly, see what I have to do to request the actual file.

[Defense counsel], you may want to submit more information, that will be fine.

(Tr. 6-9.)

Gunner's argument that defense counsel should have objected and was ineffective for not doing so is meritless.  The state appellate court found that appellate counsel performed in a "reasonable, professional manner."  (Doc. No. 5, Exh. 21.)  The court noted that Gunner's argument contained several "flaws," namely that: (1) the sentencing judge was not expressing his own recollection of the facts of the case, but merely his memory of the prosecution's position; (2) the above exchange took place in the context of the judge requesting Gunner's prison record so he could consider the positive behavior he had exhibited while incarcerated before imposing a new sentence; and (3) the judge adjourned the sentencing hearing for several weeks until Gunner's prison file was retrieved so he would be fully informed of the facts of the case.  *Id*. Clearly, the court's statements throughout the entire hearing, indicate that it was considering shortening the vacated sentence of ten years and was looking to be provided with additional information concerning Gunner's progress while incarcerated.  In fact, the court was careful to impose a sentence that would allow Gunner to seek judicial release after five years.  (Tr. 18-21.) The court further noted that while it did not doubt Gunner's sincerity as to his remorse, it

-20-

believed that a ten year sentence was appropriate with possible reconsideration at the five year mark. (Tr. 21.)  It was clearly defense counsel's strategy to bring additional reliable information to the court prior to sentencing.  This would include the issue of whether the court would give any credit to the prosecution's claim that he was "grooming another victim."  Handling the issue in this manner did not fall below acceptable standards of representation, and the state appellate court, therefore, did not violate clearly established federal law when it found appellate counsel was not ineffective.  As such, Gunner's ineffective assistance of counsel claim is without merit.

### IV.  Conclusion

For the foregoing reasons, it is recommended that Gunner's Petition be DENIED.

s/ Greg White
U.S. MAGISTRATE JUDGE

Date: <u>May 7, 2010</u>

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

-21-